UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Civil No. 04-439-N-EJL |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| REAL PROPERTY LOCATED AT 10886 EAST SIDE ROAD, PRIEST RIVER, BONNER COUNTY, IDAHO, including any and all fixtures, improvements and appurtenances thereof (Owner of Record: Thomas and Mary Allen), | ) ) ) ) ) ) ) | MEMORANDUM ORDER |
| | ) | |
| Defendant. | ) | |

Pending before the Court in the above-entitled matter is Thomas and Mary Allen's motion for summary judgment (Docket No. 16). Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## Background

On August 31, 2004, the United States of America filed a civil *in rem* complaint of forfeiture for the real property located at 10886 East Side Road, Priest River, Bonner County, Idaho. The forfeiture is related to the criminal proceedings in United States v. Bernard Bushelman, Crim. No. 05-150-N-EJL. Mr. Bushelman was convicted of conspiracy to manufacture marijuana plants and drug forfeiture. Mr. Bushelman's marijuana growing operation was located on the real property at issue in this case. The Court takes judicial notice of the pleadings filed in the criminal case in which the Allens have also filed a claim.

MEMORANDUM ORDER - 1

The Allens reside in California. Mr. Allen had purchased certain property in California with Steve Bushelman, the father of Bernard Bushelman. Prior to Steve Bushelman's death in 1983, he transferred his interest in the property owned with Mr. Allen to his son, Bernard Bushelman. One half of the California property was sold in 1984 with Bernard Bushelman receiving one-half of the interest in the property. The other half of the California property was sold in 2004 wherein Mr. Allen had a power of attorney to close the transaction on behalf of Bernard Bushelman.

In 1995, Bernard Bushelman had identified a parcel of real property with an older mobile home in Bonner County which he believed had subdivision potential and brought the property to Mr. Allen's attention. Mr. Allen decided to purchase the Bonner County property for $150,000. The Real Estate Sale Agreement indicates the buyers are Tom Allen and Bernard Bushelman and the agreement is signed by Bernard Bushelman (Docket No. 75-2, Exhibit 4 in 05-150-N-EJL). However, the deed indicates that the purchaser was only Thomas Allen who later executed a Quit Claim deed on August 22, 1995, to have the property held in his name and his wife's name (Docket No. 75-4 in 05-150-N-EJL). The loan documents for the $100,000 mortgage at 11.25% interest on the property are signed only by Thomas Allen and Mary Allen (Id.). Mr. Allen paid the balance of the costs of the purchase with a check from a California bank. The Government does not allege the proceeds used to originally purchase the property were from an illegal source.

The Court notes that a Satisfaction of Mortgage was filed on July 24, 1996 (Docket No. 75-5, Exhibit 17, in case 05-150-N-EJL). The filings in the criminal case indicate that in July 1996, a loan secured by a Mobile Home Deed of Trust for $99,800 at 9.875% interest was entered into by the Allens for the property (Docket No. 75-6, Exhibit 19, in case 05-150-N-EJL). This Deed of Trust with Washington Mutual Bank was fully paid as of March 11, 2002 (Docket No. 75-6, Exhibit 20, in case 05-150-N-EJL).[1]

---

[1] Agent Greg Gleason's declaration indicates that the Allens borrowed $99,000 in July of 1996 to purchase a mobile home that was placed on the property. The Court's examination of the Washington Mutual loan indicates the Deed of Trust was for the real property that included a 1975 mobile home that was also referenced on the Real Estate Sale Agreement, paragraph no. 6 (specifically included in sale "mobil"). Accordingly, there is no evidence the Allens

MEMORANDUM ORDER - 2

It is undisputed that Bernard Bushelman lived on the property with the permission of the Allens, but there is no evidence he held an ownership interest in the property. There is no written lease agreement executed by both parties. There are leases executed by Mr. Allen for August 1999 to July 2002 for $1,000 per month, but there is no signature by Mr. Bushelman or anyone else on the leases. See Docket No. 75-6, Exhibit 18 in case 05-150-N-EJL. Therefore, the Court finds Bernard Bushelman was not an "owner" of the property located at 10886 East Side Road, Priest River, Bonner County, Idaho.

In September of 1995, Mr. Allen wrote to Mr. Bushelman regarding some equipment and ostrich eggs to be purchased and moved to the Bonner County property. Based on the declaration of Mr. Allen this ostrich business venture was not successful and terminated shortly after it began.

It is undisputed that Bernard Bushelman lived in the mobile home on the property as a renter for some period of time. There was a joint bank account established to maintain a fund for the automatic withdrawal of mortgage payments and for the payment of taxes. Mr. Bushelman did not always pay his rent, so Mr. Allen would make deposits from his own personal funds to cover the mortgage or deed of trust monthly payments.

The Bonner County property was held as an investment property by the Allens. The Allens have stated in their affidavits that they never had occasion to visit the property in Bonner County and had no knowledge of the illegal operations being conducted by Mr. Bushelman on the property. The Allens acknowledge that Mr. Allen was aware that Mr. Bushelman had a prior drug related conviction in California in 1981. There are two transactions that the Allens claim they were not involved with but that show their names. One is a building permit, which Mr. Allen has provided handwriting exemplars to establish his signature on the permit is a forgery. The electric bill for a short time had Mary Allen's name on the account although she states in her affidavit that she never opened a utility account for the Bonner County property. The Government has provided no evidence

---

"purchased" a mobile home in 1996 and placed it on the property as stated by Agent Gleason.

MEMORANDUM ORDER - 3

to rebut the Allens' declarations that on these two instances of the use of their names without their permission.[2]

The Government points to the existence of the joint bank account to support the theory Mr. Allen was aware of the illegal operations and chose to ignore it. The Government claims that nearly $66,500 was deposited into the joint checking account by Mr. Allen between 2000 and 2002 (including a deposit by Allen for $41,000 and $9,000 check to Mr. Allen from Thomas Webb of California deposited in February 2002 and then a check for $41,000 paid to Washington Mutual Bank). The Court notes that the deed of trust held by Washington Mutual Bank was fully satisfied as evidenced by the Deed of Full Reconveyance signed on May 1, 2002. The source of the monies deposited into the joint checking account is not explained in the Allens' declarations.

It is undisputed that Mr. Bushelman had a marijuana growing operation on the Bonner County property. The indictment in the criminal case indicates that beginning on or about January 2001 and continuing until November 19, 2003, Mr. Bushelman intentionally conspired and manufactured over 1,000 marijuana plants. An amended judgment was entered in the criminal case on April 3, 2007. No appeal was filed in the criminal case. The question for the Court is whether the Allens are entitled to the "innocent owners" defense in this forfeiture action.

---

[2]The Government argues it should be up to the trier of fact to determine if the signature is a forgery and if Mary Allen ever opened a utility account in Idaho. The Court respectfully disagrees. The Claimants have come forth with declarations stating the building permit signature is a forgery and have provided handwriting exemplars to the Government. Ms. Allen's declaration is that she never opened a utility account for the Idaho property. Therefore the burden is on the Government in its response to the motion for summary judgment to come back with a declaration of an expert that the building permit signature is Mr. Allen's and/or that the utility company has a policy that requires personal identification before opening an account. Otherwise, the facts are not in dispute as to Mr. Allen's alleged signature on the building permit he had no knowledge or the short term utility billing with Ms. Allen's name.

MEMORANDUM ORDER - 4

Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[3]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

---

[3] See also, Rule 56(e) which provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM ORDER - 5

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

## Analysis

The Government bears the burden to prove by a preponderance of the evidence that the property itself is subject to forfeiture. 18 U.S.C. § 983()(I); United States v. $80,180.0 In U.S. Currency, 303 F.3d 1182, 1184 (9th Cir. 2002). The Government argues there are two theories to support forfeiture of the property: 1) the property was paid for with the proceeds of drug trafficking and is subject to forfeiture pursuant to 18 U.S.C. § 881(a)(6) and 2) that the property was involved in money laundering transactions and subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A). The Government claims the issue of "proceeds" is a disputed issue and needs further discovery.

The Claimants and the Court have assumed for purposes of this motion that the Government has established that the property is subject to forfeiture based on the marijuana growing operation that was on the property. See Kaiser Affidavit. The Allens have pleaded the "innocent owner" defense which places the burden on the claimants to establish by a preponderance of the evidence that they fit the legal definition of "innocent owners." 18 U.S.C. § 983(d)(1).

Based on the facts alleged by the Government, the Allens held a property interest at the time the illegal conduct occurred. Congress passed the Civil Asset Forfeiture Reform Act of 2000 which clarified the innocent owner requirements. Pursuant to 18 U.S.C. 983(d)(2)(A):

> the term "innocent owner" means an owner who –
> (I) did not know of the conduct giving rise to the forfeiture; or
> (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably

MEMORANDUM ORDER - 6

could be expected under the circumstances to terminate such use of the property.

In this case, the parties are focused on the claimants' knowledge of the marijuana growing operation as the arrest of Mr. Bushelman ended the use of the property for illegal purposes.

In <u>United States v. 2659 Roundhill Drive</u>, 194 F.3d 1020, 1028 (9th Cir. 1999), the Ninth Circuit held:

> What matters for the purpose of ascertaining innocent ownership is . . . whether the purchasers knew of or consented to the Paytons' drug trafficking when they bought the property. See <u>Red Ferrari</u>, 827 F.2d at 478. Most courts apply a standard of actual, rather than constructive, knowledge, with one priviso: an owner cannot deliberately avoid actual knowledge through "willful blindness." <u>See</u>, e.g., <u>United States v. One 1989 Jeep Wagoneer</u>, 976 F.2d 1172 (8th Cir. 1992).; United States v. Aleman, 728 F.2d 494 (11th Cir. 1984); <u>United States v. Batencort</u>, 592 F.2d 916 (5th Cir. 1979). This Circuit, in <u>United States v. Real Property Located at 10936 Oak Run Circle</u>, 9 F.3d 74 (9th Cir. 1993), embraced a standard more similar to one of constructive knowledge. A panel of this court there held that "innocence is incompatible with knowledge that puts the owner on notice that he should inquire further." <u>Id.</u> at 76.

In <u>Oak Run Circle</u>, the court held that § 881(a)(6) "bars an owner with knowledge of the origin of the property in drug proceeds from asserting the innocent owner defense." 9 F.3d ,74, 76 (9th Cir. 1993). The case at bar presents a different situation in that there is nothing in the record to suggest that at the time the property was purchased in 1995 by the Allens, any illegal activity was occurring on the property.

Claimants assert that because they have asserted a *prima facie* case for lack of knowledge, the burden shifts back to the Government to prove actual knowledge of the illegal conduct on their property by a preponderance of the evidence. The Court finds claimants statement of the burdens is not correct and that the burden is entirely on the claimants to prove the innocent owner defense applies. <u>United States v. Red Ferrari</u>, 827 F.2d 477, 478 (9th Cir. 1987).

The Government moves in its response for time to complete discovery pursuant to Fed. R. Civ. P. 56(f) regarding whether the allegations of the Allens can be substantiated or disproved. The parties had an informal agreement to stay the civil action pending the resolution of the criminal action which has now been completed, except for the Allen's claim of an interest in the real property in the criminal case. The Government maintains that further discovery needs to be done regarding

MEMORANDUM ORDER - 7

the proceeds that flowed through the joint checking account and whether the monies used to pay off the loans were legitimate funds. The Court agrees the Government should have some additional time to complete discovery. However, the discovery time will be limited so that this matter that was filed in 2004 can be resolved as soon as possible. The Court also puts the Government on notice that while circumstantial evidence can be relied on by the Government to establish the forfeitability property, the Court will need more than mere inferences to contest the Allens claim of innocent ownership.

Clearly, when the property was purchased by the Allens in 1995, there was no illegal activity occurring on the property. The criminal indictment alleges the illegal activity occurred between January 2001 and November 2003. The Government's briefing on this motion indicates a beginning operation date for the marijuana manufacturing to be 1998, however, no explanation for this different date from the criminal indictment is explained. See Docket No. 17, p.3.

The Court finds the Government's argument that Mr. Allen's association that started years ago with Steve Bushelman and continued to his son with a known drug conviction in 1981 means Mr. Allen was not an innocent, unknowing owner of the subject property to be unfounded based on the current record before the Court. Mr. Allen is an 79 year-old, retired state superior court judge in California and this argument assumes everyone with a prior drug conviction should be deemed a current drug dealer. There is simply no factual basis to support the assumption that Mr. Allen's limited "relationship" with Mr. Bushelman should have put him on notice that Mr. Bushelman was dealing in drugs in Idaho. The Government must come up with something more to rebut the Claimants' innocent owner defense presented in the documents and declarations.

### Order

Being fully advised in the premises, the Court hereby orders that the Allens' motion for summary judgment (Docket No. 16) is **denied without prejudice.** The Court grants the Government's request for time to complete additional discovery concerning the motion for summary judgment issues. The parties shall be allowed to complete discovery regarding this case on or before

MEMORANDUM ORDER - 8

August 31, 2007. The Government may then file any additional facts, evidence or briefing it desires to have the Court consider regarding this motion by September 14, 2007 and the Claimants may file any response to the Government's evidence and briefing on or before September 28, 2007. The Court will then reconsider the Claimant's motion for summary judgment.

DATED: **June 19, 2007**

Honorable Edward J. Lodge
U. S. District Judge

MEMORANDUM ORDER - 9